**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 7** |
| **ADAM ANDREW HURT and** | ) | |
| **JESSICA NICHOLE HURT,** | ) | |
| | ) | **Case No. 17-70281** |
| Debtors. | ) | |
| **ADAM ANDREW HURT and** | ) | |
| **JESSICA NICHOLE HURT,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 17-07020** |
| | ) | |
| **U.S. DEPARTMENT OF HOUSING** | ) | |
| **AND URBAN DEVELOPMENT,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment filed by the Debtors, Adam and Jessica Hurt ("Debtors"), and the United States Department of Housing and Urban Development ("HUD"). The Debtors filed an adversary proceeding pursuant to 11 U.S.C. §§ 542(a) and 547(b) seeking to recover a federal tax refund the United States Department of the Treasury ("Treasury") setoff prepetition within ninety (90) days of their petition date in partial satisfaction of a foreclosure deficiency that the Debtors owed to HUD.  HUD contends that the setoff is not recoverable under either section, nor is it recoverable under 11 U.S.C. § 553, the provision of the Bankruptcy Code governing setoffs.  The parties have stipulated the relevant facts, filed briefs in support of their positions, and this matter is ripe for resolution.

**FACTUAL BACKGROUND**

On or about March 1, 2011 the male debtor, Adam Andrew Hurt, obtained a Title I loan ("the Loan") from HUD, an agency of the United States, to purchase a manufactured home. The debt was in the original principal amount of $38,463.00. *Stipulation of Fact*, ¶ 1. In connection with the Loan, the male debtor also executed a "Notice to the Borrower of HUD's role in Title I Loans." Among other things, the Notice advised the male debtor that "Failure to pay this debt to HUD may result in offsets of Federal payments due to you, including Federal income tax refunds . . . ." *Id.* at ¶ 2. The Loan fell into arrears as a result of the Debtors' failure to make payments. As of July 20, 2016, the outstanding balance due on the Loan was $18,301.93. *Id.* at ¶ 3. On or about August 22, 2016, HUD sent a "Notice of Intent to Collect by Treasury Offset" to the male debtor. No response or objection to the Notice was received by HUD or Treasury in response to the Notice, and HUD referred the matter to the Treasury, an agency of the United States, in October 2016. *Id*. at ¶¶ 4, 5.

Prior to February 23, 2017, the Debtors filed their 2016 income tax return with the Internal Revenue Service, a component agency of the Treasury Department. Because the Debtors had overpaid taxes due to the United States, it was determined that Treasury owed a debt, namely, a tax refund to the Debtors in the amount of $5,267.00. *Id.* at ¶ 6. As of January 30, 2017, the Debtors owed HUD $19,653.38 by virtue of their obligations under the Loan. *Id.* at ¶ 7. On February 23, 2017, Treasury processed the request from HUD and offset the tax refund amount due to the Debtors and, instead, paid it to HUD to satisfy a portion of the indebtedness due on the Loan. *Id*. at ¶ 8. The Debtors filed a Chapter 7 bankruptcy petition on March 3, 2017, listing the tax refund as exempt under Schedule C pursuant to Virginia Code Sections 34-4 and 34-14 for $1,098.00 and also

under Section 34-26(9) for $4,169.00. *Id.* at ¶ 9. The Debtors identified the "Dpt Treasury" on Schedule F, paragraph 4.11 as a creditor of both Debtors. HUD was also listed as a party to be notified about the debt owed to "Dpt Treasury." *Id.*

On April 10, 2017, the male debtor filed a Homestead Deed dated March 3, 2017 in the Clerk's office of the Circuit Court of Tazewell County, Virginia. The Homestead Deed claimed the following as exempt property: (a) Wages garnished by U.S. Dept. of Treasury in the amount of $269.79; (b) funds on deposit in the amount of $600 and, (c) 2016 tax year income tax refunds in the amount of $549. *Id.* at ¶ 10.[1] On April 10, 2017, the female debtor filed a Homestead Deed dated March 3, 2017 in the Clerk's office of the Circuit Court of Tazewell County, Virginia. The Homestead Deed claimed the following as exempt property: (a) funds on deposit in the amount of $600 and, (b) 2016 tax year income tax refunds in the amount of $549. *Id*. at ¶ 11. The amount of the indebtedness listed by the Debtors as owing to HUD was $26,600.00, arising from "foreclosure deficiency on a home." HUD records reflect a balance due of $14,417.44 as of the filing date, March 3, 2017. *Id.* at ¶ 12.

## **CONCLUSIONS OF LAW**

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994 and Rule 3 of the Local Rules of the United States District Court for the

---

[1] It is unclear to the Court from the Complaint what amount the Debtors actually seek to recover in this case. Presumably, from a review of the Stipulation, the Debtors seek to recover the entire $5,267.00, split among the two debtors through their homestead exemptions in the amount of $549.00 each (totaling $1,098.00), with the additional balance of $4,169.00 sought under Va. Code § 34-26(9). The latter exemption pertains to portions of a tax refund attributable to the Child Tax Credit, Additional Tax Credit, or Earned Income Credit available under the Internal Revenue Code. The parties have resolved the wage garnishment outside this proceeding.

Western District of Virginia.  This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) and (F).  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

### I.    Applicable Legal Standard

Federal Rule of Civil Procedure 56, incorporated into adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).  "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol*, 316 F.3d at 523 (citing *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996)).  *See also Benson v. United States (In re Benson)*, 566 B.R. 800, 806–07 (Bankr. W.D. Va. 2017).  The parties agree, and the Court concurs, that there are no material facts in dispute.

### II.    Analysis

The Debtors ask the Court to enter summary judgment in their favor, contending that they are eligible to recover their 2016 federal income tax refund pursuant to 11 U.S.C. §§ 522 and 542[2].  Conversely, HUD requests that the Court enter summary judgment in its favor, dismiss the Complaint, and allow it to retain the Debtors' 2016 tax refund.  HUD argues that Section 547

---

[2] The Debtor's appear to assert a claim under 11 U.S.C. § 542(a), contending that the funds setoff by the Treasury should have been turned over to the Chapter 7 Trustee.  Complaint, ¶ 7.

4

preference claims are inappropriate in this case, that the Debtors could not exempt their tax overpayment under Section 522, and that the Debtors cannot invoke Section 553(b) of the Bankruptcy Code in order to set aside an improvement in HUD's position pre-petition.

### A.  11 U.S.C. §§ 547 and 542 are not applicable.

The Debtors assert that under Section 547 of the Bankruptcy Code, the intercepted funds constitute a preference and the Debtors (in the Trustee's absence of exercise of that right) are entitled to avoid the seizure of tax refund, given they have claimed an exemption in the funds. As stated in *Comer v. United States Social Security Admin. (In re Comer)*, 386 B.R. 607, 608 n.2 (Bankr. W.D. Va. 2008), "[Section] 522(g) permits a debtor to exempt property that the trustee recovers under [Section] 550 'to the extent that the debtor could have exempted such property . . . if such property had not been transferred.' Under [Section] 522(h), the debtor is entitled to avoid a transfer of property of the debtor or recover a setoff if the transfer is voidable by the trustee under [Section] 547 and the trustee does not attempt to avoid such transfer. In summary, there has to be a voidable preference under [Section] 547 which the trustee does not pursue and the property recoverable must have been exemptable by the debtor."

*Comer* addressed a nearly identical argument as that made by the Debtors in this case, where the debtors attempted to use Section 547(b) to recover a pre-petition setoff against a federal tax refund.  Specifically, *Comer* observed as follows:

> At the outset, the court will dispose of the Debtors' preferential transfer position. In order for there to be a preferential transfer under 11 U.S.C. § 547(b), there is a requirement of a pre-petition "transfer" of an interest of the debtor in property. *See* 11 U.S.C. § 547(b) (2006). Transfer is a term of art which is defined in 11 U.S.C. § 101(54). The term "setoff" is omitted from the definition of transfer in 11 U.S.C. § 101(54). The legislative history to 11 U.S.C. § 101(54) explains the omission in clear terms: "inclusion of 'setoff' is deleted. The effect is that a 'setoff' is not subject to being set aside as a preferential 'transfer' but will

5

> be subject to special rules." *See* 5 *Collier on Bankruptcy* ¶ 553.09[2][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Further, *Durham v. SMI Indus. Corp.,* 882 F.2d 881, (4th Cir.1989), stands for the proposition that only if a setoff is invalid and no right of setoff exists in bankruptcy is 11 U.S.C. § 547 applied. *See id.* at 882.
>
> In summary, the Debtors cannot utilize 11 U.S.C. § 547 for purposes of recovery of the setoff unless the setoff was not valid. The Debtors have not put into issue the validity of the setoff by any factual allegations in their complaint.

*In re Comer*, 386 B.R. at 608–09. Further, as stated in *Lopes v. United States Dep't of Housing & Urban Development (In re Lopes)*, 211 B.R. 443, 448 (D. R. I. 1997),

> Section 553(a) states, in relevant part, "Except as otherwise provided in this section . . . this title does not affect any right of a creditor to offset a mutual debt." While section 553 explicitly lists exceptions to the setoff rule, Congress chose not to include section 547 in this list. Courts have interpreted this absence as an apparent indication "that questions of setoff are governed exclusively by section 553 of the Bankruptcy Code." *In re Dillard Ford, Inc.,* 940 F.2d 1507, 1512 (11th Cir.1991); *see also Lee v. Schweiker,* 739 F.2d 870, 873 n. 4 (3d Cir.1984) (language of section 553 dictates that for setoffs, section 553, not section 547, governs).

Here, the validity of the setoff has not been called into question by any allegation of the Complaint, and a cause of action to recover it is not available under Section 547(b). Recourse, if any, lies exclusively within Section 553 of the Bankruptcy Code.

### B. The Treasury did not improve its position within the scope of Section 553(b).

Section 553 of the Bankruptcy Code does not create a right of setoff. Rather, it recognizes a right of setoff established by non-bankruptcy law and establishes limits on the exercise of that right before bankruptcy or during bankruptcy. *In re Camellia Food Stores, Inc.*, 287 B.R. 52, 59 (Bankr. E.D. Va. 2002); *In re Blanton*, 105 B.R. 321, 334 (Bankr. E.D. Va.

6

1989); *In re Porter*, 562 B.R. 658, 660 (Bankr. E.D. Va. 2016), *as amended* (Feb. 2, 2017). The Supreme Court in *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995), described the right of setoff as follows: "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'" 11 U.S.C. § 506(a) places setoff rights on similar footing to that of a lien holder in terms of secured status. Section 553(b) of the Bankruptcy Code provides a basis for recovering a pre-bankruptcy setoff in which the creditor improved its position within 90 days of bankruptcy.

In the instant case, the setoff rights were established by the Treasury Offset Program, which provides that the Treasury shall credit a taxpayer's income tax overpayment against certain preexisting obligations, including debts to other Federal agencies. 26 U.S.C. § 6402. HUD had a pre-petition claim against the Debtors for $19,653.38 based on a deficiency claim as set forth in the Stipulation, and it used its non-bankruptcy right of setoff pre-petition to collect the $5,267.00 tax overpayment.

HUD argues that section 553(b) simply limits a creditor's right of setoff and establishes an "improvement in position" test designed to ensure that a creditor will not improve its position during the 90–day period before bankruptcy and then protect its position by completing a setoff prior to a debtor filing for bankruptcy. *See* 4 *Collier on Bankruptcy* ¶ 553.09[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). HUD points to the district court's opinion in *In re Lopes*, the facts of which are substantially similar to the case at bar.

Section 553(b)(1) states, in relevant part:

> [I]f a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on

7

>   the date of such setoff is less than the insufficiency on the later of—
>   (A) 90 days before the date of the filing of the petition; and
>   (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

11 U.S.C. § 553(b)(1). "Insufficiency" is defined in Section 553(b)(2) as the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim." 11 U.S.C. § 553(b)(2).

The Debtors argue that because the setoff occurred within the 90 days of the filing of the petition, Section 553(b) compels the government to turn over the tax refund. They argue that the deficiency amount on the date of the offset was $14,386.38, and the deficiency amount 90 days before the filing of the petition was zero. The Debtors state that the deficiency became $19,653.38 during the 90-day period and the difference between the two amounts, $5,267.00, is the recoverable amount.

This same basic argument was made in *Lopes*, which the court rejected as follows:

>   Lopes contends that the setoff amount is recoverable under section 553(b) because, due to the early–1995 issuance of her 1994 income tax refund by the IRS, the insufficiency ninety days prior to the filing of her bankruptcy petition was greater than the insufficiency at the time of setoff. This argument is unconvincing, because it is based upon a fundamental misconception of what constitutes an "insufficiency" and when the manipulation of an insufficiency is disallowed under section 553(b)(1).
>
>   Congress' purpose in enacting section 553(b)(1) was to prevent an "improvement in position" by one creditor at another's expense—not to prohibit a setoff of a mutual debt that arises during the prepetition period. *See Lee v. Schweiker,* 739 F.2d 870, 877 (3rd Cir.1984). Summarizing the legislative intent, the Third Circuit stated: "[t]he concern of Congress in enacting the improvement in position test was that creditors, primarily banks, that had mutual accounts with the debtor would foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the 'insufficiency,' to the detriment of the other creditors."

8

> However, as with a setoff, there can be no "insufficiency,' as that term is defined by section § 553(b)(2), unless there are first mutual debts owing between the parties. By Lopes' own admission, on December 12, 1994, the first day of the 90–day prepetition period, the IRS owed her nothing, her tax refund being only an expectancy . . . . As such, at this time, there were no mutual debts owed between the parties and, therefore, no insufficiency. During the 90–day prepetition period, however, the income tax refund was issued, and an insufficiency of $10,638 arose. Contrary to Lopes' proposition, section 553(b)(1) does not bar the creation of an insufficiency during the 90–day prepetition period, but instead permits the trustee to recover the setoff amount only if the insufficiency is less at the time of setoff than when it arose. As the Court correctly stated in *In re Hankerson,* a case improvidently relied upon by plaintiff, "the extent of a creditor's non-allowable improvement is measured only by any *change,* favorable to the creditor, of any 'insufficiency'." 133 B.R. 711, 715 (Bankr. E.D. Pa. 1991) (emphasis in original), *rev'd on other grounds,* 138 B.R. 473 (E.D. Pa.1992) *and* 146 B.R. 653 (E.D. Pa. 1992). Here, there was no change in the insufficiency amount owed by the plaintiff; it remained constant throughout the prepetition period. Therefore, section 553(b)(1) does not provide a ground for recovery of the setoff amount in this case.

*In re Lopes,* 211 B.R. at 449.

Following the analysis in *In re Lopes*, on the first day of the 90-day pre-petition period, which is December 3, 2016, the government did not owe the Debtors any money for their overpayment of taxes in the 2016 tax year. At this point in time, the Debtors owed HUD, an agency of the federal government, $19,653.38 by virtue of their obligations under the loan. There were no mutual debts, therefore no insufficiency arose. The Debtors' refund was only an expectancy. The right to the refund arose at the end of the taxable year to which it relates, in this case, December 31, 2016. *Sexton v. Dep't of Treasury (In re Sexton)*, 508 B.R. 646, 662 (Bankr. W.D. Va. 2014) ("the Court finds that Ms. Sexton's right to recover her tax overpayment arose for the 2012 tax year at . . . midnight on December 31, 2012"); *Addison v. United States Dep't of Agriculture (In re Addison)*, 533 B.R. 520, 528 (Bankr. W.D. Va. 2015), *aff'd*, 2016 WL 223771

9

(W.D. Va. Jan. 19, 2016) ("In deciding to follow *Sexton*, this Court finds that the Debtor's right to recover for his tax overpayment for the 2011 tax year arose at midnight on December 31, 2011").

On December 31, 2016, during the 90-day pre-petition period, a mutual debt arose because of overpayment of taxes by the Debtors to the United States. The "insufficiency" established at that time was $14,386.38, the difference between $19,653.38 and the refund due of $5,267.00. "[S]ection 553(b) requires a comparison between the creditor's setoff position at the initial reference point . . . and the day on which any setoff was actually taken. Section 553(b) permits the trustee to recover any improvement in the creditor's position measured by any decrease in the creditor's insufficiency on the date of setoff." *See* 4 *Collier on Bankruptcy*, ¶ 553.09[2][a]. On February 23, 2017, when the Treasury processed the request from HUD and offset the tax refund amount due to the Debtors an insufficiency of at least $14,386.38 remained. There was no change favorable to the creditor. If anything, the insufficiency increased with the accrual of interest. HUD did not improve its position over that amount.[3] Thus, the Court agrees with *Lopes* that Section 553(b)(1) does not bar the creation of an insufficiency during the 90-day prepetition period, but permits the trustee to recover the setoff amount only if the "insufficiency" is less at the time of set off than when it arose. *In re Lopes*, 211 B.R. at 449. In this case there was no reduction in the insufficiency, therefore section 553(b) does not allow recovery by the trustee. *Id*. HUD did not improve its position within the 90-days preceding the filing of this petition.[4]

---

[3] *Lopes* also correctly points out that Section 553(a)(3)(C) of the Bankruptcy Code expressly addresses the situation where a creditor's offsetting debt arises during the prepetition 90 day preference period. Under that section, a setoff is prohibited only where the creditor incurred the debt for the "purpose of obtaining a right of setoff against the debtor." *See Lopes* 211 B.R. at 449 n.9; 11 U.S.C. § 553(a)(3)(C). Such is not the case here.

[4] Section 522(h) of the Bankruptcy Code provides, in part, that the debtor may avoid a transfer of property of the debtor o*r recover a setoff* to the extent the debtor could have exempted such property . . . if the trustee had avoided

## **CONCLUSION**

For all of the above reasons, the Court concludes the Defendant's motion for summary judgment will be granted and the adversary proceeding dismissed. The Debtor's motion for summary judgment will be denied.

A separate Order will be entered contemporaneously herewith.

**Entered this 27th day of December, 2017.**

_____

UNITED STATES BANKRUPTCY JUDGE

---

such transfer, if -- (1) such transfer is . . . recoverable by the trustee under section 553 of this title; and (2) the trustee does not attempt to avoid the transfer." 11 U.S.C. § 522(h)(emphasis added). Because the Court concludes the trustee could not have recovered the setoff under Section 553, it need not reach the issue whether the debtor could have exempted the refund.